STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ROBERT SNOW, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 29, 1977—Decided April 26, 1977.

278

Before Judges MATTHEWS, SEIDMAN and HORN.

*Messrs. Sodowick, Richmond & Crecca,* attorneys for appellant (*Mr. Donald J. Crecca,* of counsel).

*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney for respondent (*Mr. R. Benjamin Cohen,* Assistant Prosecutor, of counsel).

PER CURIAM. Defendant was indicted for (1) possession of lottery slips, papers and memoranda pertaining to the lottery business (*N. J. S. A.* 2A:121–3(b)), and (2) knowingly engaging "as a messenger, clerk, copyist, writer, sitter or in any other capacity in or about the area known as 687 Central Avenue, East Orange, New Jersey, where

lottery slips, papers and memoranda were kept and used in the business of lottery or lottery policy so called" (*N. J. S. A.* 2A:121–3(a)). He was tried to a jury and found guilty of both counts. Thereafter, he was sentenced, on the first count, to a term of 12 months at the Essex County Correction Center, "to serve 4 months custody balance on probation," and to the payment of a $500 fine. A concurrent four-month term at the Correction Center was imposed on the second count.

On this appeal defendant contends that (1) it was error to admit into evidence "the paper marked S–2," and (2) he was entitled to a judgment of acquittal on the second count in that "the State did not prove the necessary elements contained in NJS 2A:121–3(a)."

There is no merit in the first contention. Contrary to defendant's statement that the exhibit was received in evidence over objection, defense counsel explicitly stated at the time that he had no objection. It was only on the following day, during argument on motions made at the close of the State's case, that defense counsel sought to withdraw his previous consent to the exhibit, arguing that the writing on it did not relate to a lottery. However, despite some difficulty in deciphering the writing, the expert witness who testified for the State was able to discern thereon the designation "A–4," which also appeared on the other slips of paper in evidence, and which he interpreted as the code symbol for the writer of the bets. Thus, although there was some indication that other writing on S–2 may have related to horseracing, rather than to a lottery, the exhibit was relevant upon the issue of whether the other slips of paper belonged to defendant, particularly since they were not found on his person, but, according to the arresting officers, were dropped by him as they approached.

Defendant's second contention is more substantial. At the close of the evidence defense counsel moved for a judgment of acquittal on the second count, arguing that mere possession of the slips was insufficient proof that de-

fendant was a "writer, a clerk, or a messenger" for a lottery business. The trial judge disagreed, expressing the view that on the basis of the expert's testimony defendant was working for a lottery, that "everybody's got to be someplace," and that proof of a particular place was not an essential element of *N. J. S. A.* 2A:121–3(a).

*N. J. S. A.* 2A:121–3 indicates a scheme to prohibit all phases of a lottery operation. *State v. Siebert,* 126 *N. J. Super.* 534, 537 (App. Div. 1974). Subparagraph (b) declares it to be a crime for any person knowingly to possess "any paper, document, slip or memorandum that pertains in any way to the business of lottery or lottery policy, so-called * * *." This is the offense of which defendant here was found guilty under the first count of the indictment. Subparagraph (c) pertains to the ownership of a building or place where any business of lottery or lottery policy is knowingly carried on. It is not involved in this case. Subparagraph (a), the alleged violation of which is the subject-matter of the second count, provides for the punishment of any person who

> [k]nowingly engages as a messenger, clerk or copyist, or in any other capacity *in or about an office or room in any building or place* where lottery slips or copies of numbers or lists of drawings of a lottery, drawn or to be drawn anywhere within or without this State, are printed, kept or used in connection with the business of lottery or lottery policy, so-called * * * [emphasis supplied].

The State argues that since defendant was found in possession of lottery slips, such knowing possession may give rise to the inference that he was engaged in an illegal lottery, and merely "because he was en route to or from the particular place or places where he worked his illegal trade is no reason to let him escape the intent of the statute." But the argument overlooks the basic principle that working for a lottery and possession of lottery slips are separate and distinct offenses, and the former is not an integral part of the latter. *State v. Siebert, supra* at 537. See *State v. Sims,* 65

*N. J.* 359, 375 (1974). Nor, indeed, is possession of lottery slips an essential element of the crime of working for a lottery business, since obviously one may work for a lottery business in ways which do not require possessing such slips.

■■ The crime of possession of lottery slips or other papers is committed by any person who knowingly possesses any paper, document, slip or memorandum that pertains *in any way* to the business of lottery. *N. J. S. A.* 2A:121–3(b). The relationship between that which is possessed and the lottery business "need only be a connection of the most general nature." *State v. Purdy,* 51 *N. J.* 303, 310 (1968). Thus, the prohibition includes a bettor's own memorandum of a bet. *Id.* The essence of the offense is the knowing possession of the contraband. Whether the offender, in addition, works for a lottery business as a messenger, clerk, copyist, or in any other capacity is immaterial although, of course, proof of such employment would be relevant upon the issue of knowing possession.

It is to be noted that the second count charged defendant with working for a lottery "in or about the area known as 687 Central Avenue, East Orange, New Jersey, where lottery slips, papers and memoranda were kept and used in the business of lottery or lottery policy so called * * *." Since there was no proof at the trial that this address was intended to signify a particular building, store, or residence where such activity was being conducted, we surmise that it pertained to the adjacent public sidewalk where defendant was arrested.

■ It is evident to us that the trial judge mistakenly construed "place," as used in *N. J. S. A.* 2A:121–3(a), to encompass wherever an offender might be situated with lottery slips in his possession, whether in a room, building, or other place where a lottery business was actually being conducted; or, as here, on a public sidewalk. We do not understand "place" to be ambulatory in this sense. The statute clearly was intended to deal with a building or place used in con-

nection with a lottery business, and not to embrace indiscriminately each and every location where one in possession of lottery slips happened to be, including a public sidewalk, and where, even though that person might be part of an overall operation, the proofs established only the fact of possession.

In the circumstances, we are satisfied that defendant's motion for a judgment of acquittal on the second count should have been granted.

The judgment of conviction on the first count is affirmed. That on the second count is reversed and the sentence imposed thereon vacated.